In the Matter of the Arbitration of Controversies between CENTRAL AVIATION & MARINE CORPORATION, Petitioner-Cross Respondent,

and

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) AFL–CIO and its Local 365, Respondent-Cross Petitioner.

Civ. A. No. 63–C–43.

United States District Court
E. D. New York.
Feb. 26, 1963.

Peter F. Hunt, New York City, for petitioner and cross respondent.

Rubenstein, Droisen & Rubenstein, New York City, for respondent and cross petitioner.

BRUCHHAUSEN, District Judge.

The respondent Union moves for an order directing that arbitration proceed in the manner provided in the alleged agreement dated August 8, 1962 executed by and between the parties. The employer opposes arbitration and seeks an order that no collective bargaining contract exists.

The briefs, submitted by the Union, do not assist the Court in that the law cited therein, although correct, presupposes that a valid contract exists, which is the issue submitted for a ruling by this Court. Whether or not a valid collective bargaining contract was entered into on August 8, 1962 can only be determined from the facts.

## THE AFFIDAVITS OF THE RESPONDENT, THE UNION

John A. Mackie, an organizer for the respondent Union, states that he met with John F. Riley on August 8, 1962, the petitioner's sole representative, and with Messrs. Morselli, DeLorenzo and Benjamin Rubenstein, a Union attorney. In response to Mr. Rubenstein's query, Mr. Riley stated that he had authority to execute a collective bargaining contract on behalf of the employer. Mackie explained to Riley that the Union representatives were curious because the Union had prior negotiations with several other negotiators of the employer, lasting over one year, and they had no authority to sign a contract. This conduct impressed the Union that lack of good faith on behalf of the employer in bargaining was absent. The Union filed charges with the National Labor Relations Board, hereinafter called N.L.R.B., alleging as one of its grievances that the Company failed to delegate full authority to any of its negotiators to execute a contract.

The deponent further states that during the bargaining session various portions of the document dated August 8, 1962 were discussed and initialed by the parties. Provisions not discussed or initialed were left for future negotiations and discussions on August 21, 1962. A statement prepared in longhand relating to those issues was drawn and prior to signing, Mr. Riley added the sentence, "The unfair labor practice complaint filed will be withdrawn." Subsequently on August 21, 1962 wage scale issues were negotiated. It was agreed that these proposals would be submitted to the employer. Certain fringe benefits were left for future negotiations. Concerning the provision authorizing checkoff of dues, Mr. Riley informed the Union that the Company would not agree to any checkoff. The parties discussed a modification of a full union-shop. The Company feared that certain key employees would resign if there was a full union-shop.

The September 5, 1962 meeting convened and welfare benefits were discussed. It was agreed that certain costs would not exceed specified amounts. Mr.

Riley stated that the Company would not authorize a checkoff of dues but did agree to the wage increase issue. It was finally agreed that 15 key employees would not be unionized. Subsequently the proposals were submitted to the attorney for the Union who incorporated them in appropriate contract language. A supplemental agreement was also drawn, however, these two documents were never signed.

The affidavit of James J. Graham states in substance that he is an attorney associated with the respondent's law firm and handled the charge filed by the Union with the N.L.R.B. concerning lack of good faith of the Company in negotiating a collective bargaining contract. Allan Randall, Esq., of the N.L.R.B. received correspondence from the Company indicating that it was prepared to proceed with negotiations. It was suggested by Mr. Randall that Mr. Riley be contacted and negotiations proceed.

The affidavit of Benjamin Rubenstein another attorney from the Union's law firm, states that he with others on August 8, 1962 met with Mr. Riley who informed deponent he had full authority to sign a contract. Mr. Rubenstein states that when negotiations reached the economic issue, Mr. Riley informed him that no agreement could be reached prior to submission of these issues to the Company. The non-economic issues were initialed and a handwritten "Memorandum of Understanding" was prepared and signed by the parties. On August 20, 1962, Mr. Riley requested and received a copy of the initialed document. On September 4, 1962 an employee, Walter J. Touhey, filed a petition with the N.L.R.B. seeking decertification of the respondent as bargaining representative. The Board after a hearing concluded that the document of August 8, 1962 was in fact a collective bargaining contract effective for contract bar purposes and ordered the petition dismissed.

The affidavits of Forest L. Innis and Jerome S. Rubenstein, Esq. do not add anything substantial to the issue of whether a contract in fact was executed.

## THE AFFIDAVITS OF PETITIONER, THE EMPLOYER

In opposition to this motion, the affidavit of Peter F. Hunt, Esq., secretary and legal officer of the Company states that the negotiators were to listen and report all contract negotiations for review by him and the Board of Directors for final decision. All issues that were agreed upon by the Board would be approved by resolution adopting the proposals and they would be signed on behalf of the Company by Edwin S. Guilford, the Chairman of the Board. No proposals were ever submitted to the Board for approval and no contract ever signed.

The decertification hearing was attended by Mr. Riley as an observer and not as a representative of the Company. The hearing was considered non-adversary. On October 1, 1962 it became apparent that the "Memorandum of Understanding" would be significant in the decertification hearing. As far as the parties were concerned this memorandum was to be regarded for the purpose of narrowing the bargaining issues.

The affidavit of Edwin S. Guilford, Chairman of the Board of the Company, states no contract exists. He has been the Chairman since the inception of the Company and in accordance with By-Laws and statute knows that the Board has never entered into any collective bargaining agreement. Authority to execute such an instrument would be delegated to the deponent. A letter dated July 13, 1962 from the respondent's attorney to Mr. Palomba, the predecessor of Mr. Riley, marked Exhibit 1 indicates the Board of Directors be requested to give him plenary authority to negotiate and bind the Company to a contract. This plenary authority was not issued by the Board.

On July 25, 1962 a charge was brought against the employer alleging, among

other things, the Company is sending inexperienced negotiators without authority to bind the employer.

The affidavit of John F. Riley states that it was his duty to participate in negotiations only and without authority to bind the Company. He informed Mr. Graham his only purpose was to narrow issues and explore all previous discussions between the Union and the Company.

The affidavit of John G. Palomba, the General Manager of the Company, states in substance that he retained Mr. Riley as a negotiator to discuss the issues and report back to the Company for final decision. Absolutely no authority was vested in Mr. Riley to bind the Company.

### ANALYSIS OF THE FACTS

In its brief the Union urges that the order of the N.L.R.B. should be res judicata as far as the validity of the contract is concerned. The Court has been unable to discover any case law deciding that an N.L.R.B. order is res judicata. At most this order can only be used as an additional factor in favor of the movant. The hearing, moreover, was non-adversary.

It appears from the moving affidavits themselves that no valid contract existed. The facts indicate that subsequent to the August 8th meeting, Mr. Riley informed the Union representatives that the Company would decide whether or not to agree to issues that were discussed on that date. These decisions were related by Mr. Riley on the August 21st and September 5th meetings to the Union representatives. The whole presentation indicates that the intent of the parties was to meet on August 8th, narrow the issues, inform the Company of Union demands and await its decision.

The Court concludes that no collective bargaining agreement was entered into on August 8, 1962 and that the cross-petition of the respondent should be dismissed.

Settle order on five (5) days' notice.